UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

AUDREY ANNA DURDEN,

      Plaintiff,

v.                                                                    Case No. 3:14cv481/CJK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

      Defendant.

_____/

<u>MEMORANDUM ORDER</u>

      This case is before the court pursuant to 42 U.S.C. § 405(g) for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Audrey Anna Durden's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34, and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83.[1]  The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73 for all proceedings in this case, including entry of final judgment.  Upon review of the record before this court, I conclude that the findings of fact and determinations of the Commissioner are supported by substantial evidence.  The decision of the

---

[1] For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986). All references to statutes and rules in this order will be to those addressing Disability Insurance Benefits.

Commissioner, therefore, will be affirmed and plaintiff's applications for benefits will be denied.

## ISSUES ON REVIEW

Plaintiff, who will be referred to as claimant, plaintiff, or by name, raises three issues on appeal.  She claims: 1) the Administrative Law Judge ("ALJ") erred by failing to consider the impact of her migraine headaches on her ability to work; 2) the ALJ's reasons for rejecting the opinions of Dr. Jackson, her treating physician, were not based on substantial evidence; and 3) the ALJ failed to comply with SSR 00-4p because the vocational expert's testimony conflicted with the Dictionary of Occupational Titles ("DOT") and the ALJ failed to resolve the conflict.

## PROCEDURAL HISTORY

Claimant filed her applications for DIB and SSI on September 29, 2011, alleging disability beginning on June 28, 2009.  T. 287-300, 309.[2]  Plaintiff's claims were denied initially and on reconsideration.  T. 207-19, 223-36.  Plaintiff requested a hearing before an ALJ.  T. 237-40.  Plaintiff's request was granted and she appeared for a hearing on April 16, 2013.  T. 43-77.  On May 28, 2013, the ALJ issued a decision denying plaintiff's applications for benefits.  T. 17-42.  Claimant petitioned the Appeals Council for a review of the ALJ's decision.  T. 1-6.  The Appeals Council denied claimant's request; as a result, the ALJ's decision became the final determination of the Commissioner.  T. 1-6.

---

[2] The administrative record, as filed by the Commissioner, consists of nine volumes (docs. 7-1 through 7-9), and has 549 consecutively numbered pages.  References to the record will be by "T.," for transcript, followed by the page number.

## FINDINGS OF THE ALJ

In her written decision, the ALJ made a number of findings relative to the issues raised in this appeal:

- "The claimant meets the insured status requirements of the Social Security Act through September 30, 2014." T. 23.

- "The claimant has not engaged in substantial gainful activity since April 1, 2011, the date of the prior Administrate Law Judge's decision (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*)." T. 23.

- "The claimant has the following severe impairments: obesity, diabetes mellitus, hypertension, migraine headaches, osteoarthritis, asthma, uterine fibroids, depression, and anxiety (20 CFR 404.1520(c) and 416.920(c))." T. 23.

- "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926." T. 25.

- "[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can stand and walk no more than 30 minutes at one time and no more than two hours in an eight-hour workday. She can sit for a full workday without restrictions. She can occasionally operate foot controls with the bilateral lower extremities. She can occasionally climb stairs and ramps, stoop, and crouch. She should never climb ladders, ropes or scaffolds, kneel, and crawl. She should avoid exposure to unprotected heights, dangerous equipment, temperature extremes, humidity, wetness, dust, chemicals, and fumes, and exposure to concentrated environmental pollutants. She is able to

understand to carry out simple one or two step instructions and detailed but not uninvolved written or oral instructions involving a few concrete variables in or from standardized situations with minimal changes in the work settings and in routines. She should avoid tasks involving a variety of instructions or tasks.  She can make judgments only on simple work-related decisions.  She can tolerate occasional and superficial contact with the public, but needs to avoid work in crowds."  T. 26-27.

- "The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965)."  T. 35.

- "The claimant was born on January 27, 1965, and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963)."  T. 35.

- "The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964)."  T. 35.

- "Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a))."  T. 35.

- "The claimant has not been under a disability, as defined in the Social Security Act, from June 28, 2009, through the date of the decision (20 CFR 404.1520(g) and 416.920(g))."  T. 36.

## STANDARD OF REVIEW

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the ALJ applied the correct legal standards.  *See Lewis v. Callahan*, 125 F.3d 1436, 1439

(11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). With reference to other standards of review, the Eleventh Circuit has said that "'[s]ubstantial evidence is more than a scintilla . . . .'" *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (quoting *Lewis*, 125 F.3d at 1439). Although the ALJ's decision need not be supported by a preponderance of the evidence, therefore, "it cannot stand with a 'mere scintilla' of support." *See Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner] . . . .'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). A reviewing court also may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *See Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *See Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985); *see also Getty ex*

*rel. Shea v. Astrue*, No. 2:10–cv–725–FtM–29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011).[3]

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

---

[3] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

4.  If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.[4]

5.  Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

"[R]esidual functional capacity is the most [claimant] can still do despite [claimant's] limitations."[5]  20 C.F.R. § 404.1545(1).  The ALJ establishes residual functional capacity, utilizing the impairments identified at step two, by interpretation of (1) the medical evidence, and (2) the claimant's subjective complaints (generally

---

[4] Claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  *Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir.  1986).

[5] In addition to this rather terse definition of residual functional capacity, the Regulations describe how the Commissioner makes the assessment:

> (3) Evidence we use to assess your residual functional capacity.  We will assess your residual functional capacity based on all of the relevant medical and other evidence.  In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity.  (See § 404.1512(c).)  However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources.  (See §§ 404.1512(d) through (f).)  We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations.  (See § 404.1513.)  We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons.  (See paragraph (e) of this section and § 404.1529.)[.]

20 C.F.R. § 404.1545(a)(3).

Case No. 3:14cv481/CJK

complaints of pain).  Residual functional capacity is then used by the ALJ to make the ultimate vocational determination required by step five.[6]  As the Eleventh Circuit has explained,

> [i]n practice, the burden temporarily shifts at step five to the Commissioner.  The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that [s]he is unable to perform the jobs that the Commissioner lists.  The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.

*Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001); *see Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 fn.3 (7th Cir. 1987) ("The shifting of the burden of proof is not statutory, but is a long-standing judicial gloss on the Social Security Act.")).  Often, both the medical evidence and the accuracy of a claimant's subjective complaints are subject to a degree of conflict and that conflict leads, as in this case, to the points raised on judicial review by the disappointed claimant.

---

[6] "Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.)  We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."  20 C.F.R. § 404.1520(a)(4).

## FACT BACKGROUND AND MEDICAL HISTORY[7]

At the time the ALJ issued her decision, plaintiff was forty-eight years old.  T. 17, 47, 287, 291, 308.  She testified at the hearing that she completed the eighth grade and had worked as a short order cook, nurse assistant, cashier/sales clerk, and in the fast food industry.  T. 47, 49-51, 70, 314, 321-24, 350.  Plaintiff last worked in June 2009[8] and claims to be disabled based on a number of conditions, including arthritis in the hips and knees, which she contends "prevents [her] from standing for very long and walking and actually sitting, because [she has] to constantly move" particularly in the winter and rainy weather, when the arthritis "starts acting up."  T. 49, 52, 58. Plaintiff purports to have restless leg syndrome which "keeps [her] awake quite a bit," that her hearing and vision are "going," and that she has asthma which is "getting much worse . . . to where [she] can't breathe" and "can't walk very far without having a problem breathing.[9]  T. 52-53.  When asked if there was anything else preventing

---

[7] The recitation of medical and historical facts of this case, as set out below, is based on the court's independent review of the record.  Although intended to be thorough and to provide an overview of the claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as necessary in the Analysis section.

[8] Plaintiff testified that she was terminated from her job as a cashier at Party City on June 28, 2009, "because they asked [her] to do something that [she] physically couldn't do."  T. 49.  The task she was unable to perform was cleaning a full-length window.  T. 49-50.  Plaintiff had been employed by Party City for six years when she was terminated.  T. 50.  Plaintiff looked for work for "the first years . . . after" her termination but was unable to procure employment – according to plaintiff, because employers "took one look at [her] and said we don't think you can do the job." T. 50.  When psychologically evaluated for purposes of her disability claim, plaintiff attributed her unemployability to her obesity.  T. 393.

[9] Plaintiff explained that she smoked for thirty years and was "slowly stopping but [had not] completely quit."  T. 53.  Plaintiff also acknowledged that her hearing would not interfere with her ability to work and neither would her vision if she had corrective lenses.  T. 63.

her from working, plaintiff referred to her "mental state" and testified that she was "getting a little foggy there." T. 53. Plaintiff also testified that she "can't do crowds" and has panic attacks when subjected to crowds and certain sounds and smells. T. 53, 65. Plaintiff acknowledged that she was not being treated for any of the conditions she mentioned because she was unable to afford it. T. 52-53. To control pain and discomfort, however, plaintiff's brother "will get [her] a bottle of arthritis strength Tylenol and [she] go[es] through a big bottle like that in no time." T. 53-54. Plaintiff also moves around and adjusts the way she is sitting to relieve pain. T. 54. Plaintiff later acknowledged that she takes medication for high blood pressure and diabetes, which controls the conditions. T. 55, 68.

Plaintiff testified she has constant numbness in her feet, which she attributed to diabetes. T. 66. She also said that, due to pain and weakness, a doctor advised her to lie down and prop her feet up above her heart at least six hours a day. T. 66-67. Plaintiff stated she tries "to do it, you know, at least a couple of hours a day, but . . . can't lay flat very long." T. 67.

Ms. Durden is homeless and lives in a tent in the woods on property owned by her brother. T. 55, 64. When she has access to electricity, she will use heating pads or ice packs for an hour or two, but "most of the time [she] just kind of . . . [has] to muscle through it." T. 54. On the day of the hearing, plaintiff rated her pain level as "probably around a four" on a ten-point scale. T. 59. Plaintiff had taken her diabetes and blood pressure medications, as well as Tylenol for her arthritis. T. 59. When asked about her pain level "in the coldest time of the winter when [she is] living in [her] dome tent and having taken the Tylenol Arthritis," she responded "probably about an eight" and explained that her pain decreases as she "get[s] warmed up." T.

59-60.  Plaintiff assessed her "average pain" as "usually around a four or a five" but testified that the pain decreases when she takes "Tylenol Arthritis."  T. 60.

Plaintiff testified she can walk approximately thirty feet and stand approximately fifteen minutes.  T. 55.   She "can sit for a long time . . . [i]f [she is] able to like move around and readjust."  T. 58.  She can lift a five-pound bag of sugar, "[b]ut not much after that."  T. 58.  She believed "a problem with [her] stomach area" prevented her from lifting more weight.  T. 60.  She then acknowledged that she can lift "five or ten pounds."  T. 60.  She can perform an activity for approximately ten to fifteen minutes before having to sit down, but if she sits for a long period of time, she has to "reposition" herself because her hips hurt.  T. 67.  She did not think she was capable of completing an eight-hour work day at a "sitting job" because she has to prop her legs up and lie down.  T. 67-68.  She has good and bad days.  T. 68.

In describing daily activities, plaintiff recalled she spends most of the day in her tent and "tr[ies] to read if the print is big enough."  T. 56.  Her sister works at Walmart and brings her food, using plaintiff's "food stamp card."  T. 56.  Two months before the hearing, plaintiff's sister drove her over eight hours to visit her daughter in Palm Coast, Florida.[10]  T. 57.  Every other weekend, plaintiff travels approximately forty-five minutes with her brother to Defuniak Springs to visit her granddaughter.  T. 61.

At the time of the hearing, plaintiff received medical treatment from various providers at the Okaloosa County Health Department ("Okaloosa") and Sacred Heart Women's Care Center ("Sacred Heart").   Jessica Jackson, M.D., was one such

---

[10] Claimant testified that the trip should have taken six hours but did not explain the reason for the delay.  T. 57.

provider and treated plaintiff for abnormal uterine bleeding and dysmenorrhea.  T. 355-90, 413-62, 510-549.  On March 19, 2013, Dr. Jackson completed an Assessment of Physical Residual Functional Capacity ("APRFC"), indicating that in an eight-hour workday, plaintiff could stand for less than one hour, walk for one to two hours, and sit for more than six hours.  T. 460.  According to the APRFC, plaintiff could occasionally lift no more than ten pounds and could not climb stairs or ladders or kneel.  T. 460-61.  Plaintiff would require at least a fifteen minute rest period every two hours, experience fatigue because of her medications, and be absent from work more than four days per month.  T. 461.  Dr. Jackson opined plaintiff was disabled from full-time continuous employment.  T. 461.

At the hearing the ALJ elicited testimony from vocational expert Vicky Pratton regarding plaintiff's ability to perform work-related activities.  When asked whether jobs exist in the national economy for an individual with claimant's age, education, work experience, and residual functional capacity, Ms. Pratton responded affirmatively, testifying that such an individual would be able to perform the requirements of occupations such as light electrical assembler, light router, and sedentary surveillance system monitor, all of which have a specific vocational preparation code level of two.  T. 72.  Ms. Pratton also testified that if plaintiff had the walking, standing, sitting, and lifting restrictions indicated by Dr. Jackson, she would be unable to engage in any work in the national economy, particularly in light of her fear of crowds, which precludes work in the fast food industry.  T. 71-73.

## ANALYSIS

A.   Migraine Headaches

Ms. Durden first argues the ALJ erred in failing to consider the impact of migraine headaches on her ability to work.  The ALJ acknowledged in her decision that plaintiff "complained of daily migraine heachaches" and found migraines to be a severe impairment.  T. 23, 28.  The ALJ determined, however, that the migraines were not "of the frequency and/or severity to preclude all work."  T. 28.  Plaintiff claims the ALJ's finding in that regard was not based on substantial evidence, arguing the medical records are replete with evidence pertaining to her migraine headaches. Plaintiff points out that, on May 13, 2011, she reported having daily migraines for approximately two weeks; treatment notes dated March 13, 2012, indicate that she experienced migraine headaches four days a week; and a reference to migraines appears in a medical record dated September 27, 2012.  T. 358, 418-19, 443-44.  She also challenges the ALJ's finding that there was no evidence suggesting the need for medication stronger than ibuprofen, maintaining the medical records show she was treated with Imitrex.  T. 443-44, 454.

Although the record indicates Ms. Durden suffers from migraine headaches, it contains no indication that the condition precludes work.  In fact, no opinion from a medical provider – or even a comment from plaintiff – shows that the migraine headaches impacted ability to function.  Instead, the record shows that the migraines "improved with ibuprofen" when taken timely.  T. 369, 443.  Although plaintiff mentioned migraine headaches on a number of occasions, the undersigned noted only one instance in the record in which plaintiff actually sought treatment for the

condition.[11]  T. 443-44.  Moreover, when asked at the hearing about her inability to work, plaintiff made no mention of migraines.  Contrary to the present assertions, therefore, the undersigned finds that the ALJ considered plaintiff's migraine headaches, and the decision that plaintiff was able to work with restrictions, despite the headaches, is supported by substantial evidence.

B.    Dr. Jackson's Opinion

Plaintiff next urges that in formulating RFC, the ALJ improperly rejected the findings of Dr. Jackson.  As plaintiff states, the ALJ rejected Dr. Jackson's opinion of inability to work full-time, citing a lack of support for the opinion in Dr. Jackson's treatment notes.  Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).  "Good cause" exists when:  (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Phillips,* 357 F.3d at 1241; *see also Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the

---

[11] Plaintiff was prescribed Imitrex during that visit, which was on March 13, 2012, but she apparently could not continue taking it because of the gastrointestinal effects.  T. 443.

record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  Where a treating physician has merely made conclusory statements, however, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R. 404.1527(d).

The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight.  *See* 20 C.F.R. § 404.1527(d)(1);  *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *Hurley v. Barnhart*, 385 F. Supp. 2d 1245, 1255 (M.D. Fla. 2005).  However, a brief and conclusory statement unsupported by medical findings, even if made by a treating physician, is not persuasive evidence of disability.  *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980).  "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate [her] reasons." *Phillips*, 357 F.3d at 1241.  Failure to do so is reversible error.  *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)); *see*

*also Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 (11th Cir. 2006) (also citing *MacGregor*).

Opinions on certain issues, such as a claimant's RFC and whether a claimant is disabled, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."  20 C.F.R. § 416.927(d); *see* SSR 96-5p; *Adams v. Comm'r, Soc. Sec. Admin.*, No. 14-11231, 2014 WL 4922215, at *2 (11th Cir. Oct. 2, 2014); *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877-78 (11th Cir. 2013); *Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986).   Opinions reserved to the Commissioner, even when offered by a treating physician, are not entitled to controlling weight or special significance.  *See* SSR 96-5p.  "Giving controlling weight to such opinions . . . would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled."  *Id.*  Although a physician's opinions about what a claimant can still do or the claimant's restrictions may be relevant, therefore, such opinions are not determinative because the ALJ has the responsibility of assessing the claimant's RFC.  *See* 20 C.F.R. §§ 416.912(b)(2), 416.913(b)(6), 416.927(d)(2), 416.945(a)(3), 416.946(c); SSR 96-5p; *see also Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive.").

Significantly, although plaintiff refers to Dr. Jackson as a treating source, the record does not include any treatment records from Dr. Jackson.  Moreover, the records from Okaloosa and Sacred Heart do not appear to reference Dr. Jackson,

much less reflect the treatment Dr. Jackson provided to plaintiff.  And plaintiff did not list Dr. Jackson as a medical source in documents she submitted in connection with her applications for benefits.  T. 316-18, 333-34, 343, 348-49).  It thus is not clear from the record that Dr. Jackson in fact was a treating physician for purposes of the regulation.  *See* 20 C.F.R. §§ 404.1502, 416.902.  In the absence of such a relationship, Dr. Jackson's opinion was not entitled to any deference or special consideration.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Eyre*, 2014 WL 4814775, at *2; *Denomme*, 518 F. App'x at 878; *Crawford*, 363 F.3d at 1160.

In addition, Dr. Jackson's opinion that plaintiff was "disabled from full-time continuous employment," as well as Dr. Jackson's opinions regarding plaintiff's abilities, is an opinion on an issue reserved for the Commissioner (T. 460-61).  *See* 20 C.F.R. §§ 404.1527(d)(1) and (2), 416.927(d)(1) and (2); SSR 96-5p.  As set forth above, an opinion on an issue reserved for the Commissioner is not a medical opinion and, therefore, Dr. Jackson's opinions that plaintiff was "disabled" and had severe limitations were not entitled to any special significance.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p; *Eyre*, 2014 WL 4814775, at *2; *Denomme*, 518 F. App'x at 877-78; *Bell*, 796 F.2d at 1353-54.  Furthermore, when asked if plaintiff's "disabling condition" was expected to last twelve months or longer, Dr. Jackson responded "no."  T. 461.  To be "disabled" within the meaning of the Social Security Act, a claimant's impairments must prevent her from performing substantial gainful activity for a continuous period of not less than twelve months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R.§§ 404.1505(a), 404.1509, 416.905(a), 416.909; *Barnhart v. Walton*, 535 U.S. 212, 217 (2002).  Hence, even were one to fully credit Dr. Jackson's opinion, such opinion would not provide a basis for finding

plaintiff disabled within the meaning of the Act.

No evidence in the record provides support for Dr. Jackson's opinion, and Dr. Jackson provided no basis for her opinion that plaintiff was disabled or medical findings in support thereof.  T. 460-61.  *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3); *Crawford*, 363 F.3d at 1159-60; *Phillips*, 357 F.3d at 1240-41.  In fact, it appears as likely as not that Dr. Jackson's opinion was based on claimant's need for fibroid tumor removal, a procedure to be performed a couple of weeks after Dr. Jackson completed the RFCA.  To the extent Dr. Jackson relied solely on plaintiff's subjective complaints, her opinion is further undermined.[12]  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013); *Crawford*, 363 F.3d at 1159-60.

Not only is Dr. Jackson's opinion unsupported by the record, but it also is inconsistent with other evidence in the record, which demonstrates that while plaintiff may have experienced symptoms from her various impairments, none of her impairments was of disabling severity.  *See* 20 C.F.R. §§ 404.1527(c)(3) and (4), 416.927(c)(3) and (4); *Crawford*, 363 F.3d at 1159-60; *Phillips*, 357 F.3d at 1240-41. To the contrary, the record shows that most, if not all, of plaintiff's symptoms were controlled by medication.  The fact that plaintiff sought employment following her

---

[12] Plaintiff submitted evidence to the Appeals Council, but because she challenges only the ALJ's decision, the undersigned need not consider such evidence in determining whether substantial evidence supports the ALJ's decision. T. 510-49. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1266 (11th Cir. 2007). Moreover, as noted by the Appeals Council, the evidence does not undermine the substantial evidence supporting the ALJ's decision. T. 1-2. *See id.* The undersigned also notes that the ALJ did not fully credit plaintiff's testimony. Plaintiff did not challenge that finding, however, so it need not be addressed further.

termination from Party City also undercuts Dr. Jackson's opinion, as well as plaintiff's claim of disability. The undersigned thus finds the ALJ's decision to reject Dr. Jackson's opinion supported by substantial evidence.

C.     Compliance with SSR 00-4p

As her final assignment of error, plaintiff argues the ALJ failed to comply with SSR 00-4p because the vocational expert's testimony conflicted with the DOT and the ALJ failed to resolve the conflict. Plaintiff's argument is unpersuasive for a couple of reasons. First, plaintiff failed to demonstrate at the hearing any apparent conflict between the vocational expert's testimony and the DOT. As required by SSR 00-4p, at the beginning of the hearing, the ALJ directed the vocational expert to advise her if any of the vocational expert's testimony deviated from the DOT. T. 69. Following the vocational expert's testimony, the ALJ asked the vocational expert to confirm that her testimony did not conflict with the DOT. T. 72. *See* SSR 00-4p, 65 Fed. Reg. 75,759-01 (Dec. 4, 2000). The vocational expert confirmed the absence of any conflict but clarified she used her "knowledge, education, training, and experience" to take into account the limitations on standing and walking, as well as dealing with crowds and the public, because "the DOT didn't go into that much detail. . . ." T. 72. At no time during the hearing did anyone, including plaintiff's counsel, challenge the vocational expert's testimony or point out a conflict between the vocational expert's testimony and the DOT.

As defendant explains, SSR 00-4p does not require an ALJ to independently investigate a vocational expert's testimony or further question a vocational expert when the vocational expert testifies there is no inconsistency or conflict between her testimony and the DOT. *See, e.g., Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973,

975 (11th Cir. 2012); *Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793, 795-96 (11th Cir. 2011); *Jones v. Comm'r of Soc. Sec.*, 423 F. App'x 936, 938-39 (11th Cir. 2011). Instead, SSR 00-4p only imposes an "affirmative responsibility" on the ALJ to inquire whether any such conflict exists and, if such a conflict exists, obtain a reasonable explanation for it.[13] If the ALJ inquires as to the existence of a conflict and neither the vocational expert nor plaintiff identifies an apparent conflict or inconsistency, the ALJ has fulfilled her duty under SSR 00-4p. *See Leigh*, 496 F. App'x at 975; *Hurtado*, 425 F. App'x at 795-96; *Jones*, 423 F. App'x at 938-39; *Gray v. Colvin*, No. 3:12cv506/EMT, 2014 WL 1118105, at *9 (N.D. Fla. March 20, 2014); *Terwilliger v. Colvin*, No. 1:12-cv-00129-MP-GRJ, 2013 WL 2251563, at *10-13 (N.D. Fla. May 21, 2013). Contrary to claimant's argument, therefore, the ALJ did not fail to comply with SSR 00-4p.

Second, even if a conflict existed, the ALJ was entitled to rely on the vocational expert's testimony. Indeed, in the Eleventh Circuit, the expert opinion

---

[13] The regulation provides, in full, as follows:

> When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p.

"trumps" the DOT. *See Miller v. Comm'r. of Soc. Sec'y*, 246 F. App'x 660, 661-62 (11th Cir. Aug. 31, 2007) ("If there is a conflict between the DOT and the jobs identified by a vocational expert in response to the hypothetical question, the testimony of the vocational expert 'trumps' the DOT."); *Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999). As the Sixth Circuit has recognized, the DOT "is not the sole source of admissible information concerning jobs." *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1194) (quoted with approval in *Jones*, 190 F.3d at 1230); *see also Jones v. Comm'r of Soc. Sec.*, 423 F. App'x 936, 939 (11th Cir. 2011) ("In this Circuit, a VE's testimony trumps the DOT to the extent the two are inconsistent."); *Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995) (proper for ALJ to accept vocational expert's description of jobs as sedentary although DOT described them as light or medium); *compare Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) (ALJ may rely on expert testimony which contradicts the DOT if the record contains persuasive expert evidence to support the deviation) and *Montgomery v. Chater*, 69 F.3d 273, 276-77 (8th Cir. 1995) (vocational expert may testify in conflict with reference book with respect to particular jobs that may vary under certain circumstances from descriptions in the reference book); *but see Campbell v. Bowen*, 822 F.2d 1518, 1523 n.3 (10th Cir. 1987) (when expert testimony conflicts with the DOT, the DOT controls); *Smith v. Shalala*, 46 F.3d 45, 47 (8th Cir. 1995) (same). Hence, the ALJ was entitled to rely on the vocational expert's testimony regarding plaintiff's ability to perform certain jobs even though some of the vocational expert's testimony may have contradicted the DOT. *see also Corbitt v. Astrue*, 2008 WL 1776574, *6 (M.D. Fla. Apr. 17, 2008) (finding that *Miller, Jones v. Apel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999), which noted that the vocational

expert's testimony "trumps" the DOT but was decided prior to the SSA's publication of SSR 00-4 in December 2000, is binding precedent and, therefore, even assuming a conflict existed between the testimony of the vocational expert and the DOT, an ALJ's failure to resolve the conflict does not constitute reversible error).  Plaintiff's third assignment of error thus also is without merit.

<u>CONCLUSION</u>

For the reasons set forth above, the court finds the Commissioner's decision supported by substantial evidence and application of the correct legal standards.[14] The decision of the Commission, therefore, will be affirmed and plaintiff's applications for DIB and SSI will be denied.  *See Carnes*, 936 F.2d at 1218 ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").

**ACCORDINGLY, it is ORDERED:**

1.   The decision of the Commissioner is AFFIRMED and plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income are DENIED.

2.  The clerk is directed to close the file.

---

[14] The court notes that, to the extent it reviewed the legal principles upon which the ALJ's decision is based, it conducted a *de novo* review.  *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

DONE AND ORDERED this 21st day of September, 2015.

*/s/ Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**